## *Ashcraft vs. Brownfield &c.*

Appeal from the Hardin Circuit; PAUL I. BOOKER, Judge.

*Liens. Construction, Obligations, Parties.*

Chief Justice BIBB delivered the opinion of the Court.

     On the 17th April, 1822, William Brownfield, executed to John Ashcraft, a writing, declaring that he had sold to said Ashcraft, "a certain tract, *an* piece of land, it being, and lying *betwn* John Ashcraft, *am* on the upper side, and John *W. Eace* on the *lore* side, and *convaid* to said Brownfield by Jeremiah Briscoe, said *convaince record* in Hardin county *clark's* office, for the consideration of three hundred and fifty dollars paid in hand, and it being plainly *undrstood*, that if the line of Morgan shall take any part of said survey, said Brownfield is to pay or discount *equivlent* to three hundred and fifty dollars."

CHANCERY.

Case 20.

April 23.

Obligation of
of Brown-
field to Ash-
craft.

ASHCRAFT vs. BROWNFIELD &c.

Conveyances from Briscoe to Brownfield

Before the year 1814, Jeremiah Briscoe had conveyed by deed of general warranty, twenty-two acres of land to said William Brownfield, he had likewise executed his obligation to said Brownfield for a larger parcel of land, part of the same grant which included the twenty-two acres, and Brownfield having sold to Mingis one hundred acres, Briscoe conveyed to Mingis, by request of said Brownfield that parcel, and on the sixth day of May, 1814, said Briscoe in consideration of $130, conveyed to said Brownfield, by deed of warranty against himself, and his heirs only, by specified boundaries, declared to be the whole of Edward Brownfield's patent, bearing date on the 24th May, 1786; but the deed declares that said Briscoe had before deeded one hundred acres to Peter Mingis, part of said Edward Brownfield's patent of 400 acres, and likewise, that he had before that time, conveyed to said William Brownfield, twenty-two acres, or thereabouts, by deed with general warranty, therefore, these parcels of 100 acres, and of twenty-two acres, are excepted out of this deed, the balance remaining of said patent, supposed to be about 300 acres. To this deed Ashcraft the complainant, Peter Mingis and others were subscribing witnesses, and on the day of its date, it was duly proved by the oaths of Mingis and Downs, two of the witnesses, and admitted to record in the county of Hardin, wherein the land lies.

Mortgages and assignments.

On the 18th of July, 1821, *however*, *William* Brownfield, had mortgaged to William Cessna by deed duly recorded on the day of its date, one hundred acres of land described as the tract on which he lived, together with another tract on Bear Creek, and various articles of personal property, to secure the payment of five hundred dollars, this mortgage was known to Ashcraft, who refused to purchase of Brownfield, until this incumbrance on the proposed sale to him was removed, and accordingly, Cessna, who was anxious for the sale to Ashcraft, and aided in the negotiation, did release to Ashcraft, telling him that with the release of this mortgage, and one held by Brown, the land was free of incumbrance; Brown's mortgage was paid off by Ashcraft, and

Cessna is one of the subscribing witnesses to the obligation of William Brownfield to Ashcraft.

William Brownfield made an endorsement on the deed of Briscoe to him, for the twenty-two acres; "I assign the within to George Brownfield, to secure the payment of fifty dollars, as witness my hand this 6th February, 1818." To this Cessna was a subscribing witness. This was in possession of Cessna, in May 1822; the assignment was then not erased in any part, but since, the words "to secure the payment of fifty dollars," have been erased. Chastain with full knowledge of Ashcraft's purchase, and that he claimed the twenty-two acres, obtained this deed, applied to Jeremiah Briscoe, in July 1822, and obtained from him a deed, and received possession from William Brownfield, who was then living on the land.

The deed for the twenty-two acres has never been recorded, and the dwelling house of William Brownfield and orchard, are situate within the boundaries of that deed.

Ashcraft's bill.

In June 1822, Ashcraft exhibited his bill against William Brownfield, to compel a conveyance of the land, according to his bond of the 14th April, alleging a demand and refusal. On the 5th of September, 1822, he amended his bill, and made Cessna and Chastain parties; he exhibited his bond of the 17th April, the mortgage to Cessna, the assignment from Cessna to him, as far as relates to the land, dated 21st May, 1822, the deed from Briscoe to William Browning, of the 6th May, 1814, charges that Chestain acquired the assignment of the unrecorded deed, and the deed thereby from Briscoe with full knowledge of his purchase of the twenty-two acres, and that the said assignment by William to George Brownfield, was only to secure the payment of fifty dollars; he charges, that William Brownfield and Cessna, before his purchase, both represented that by the release of the mortgage held by Cessna and Brown's mortgage, the land would be free from any farther incumbrance; that they fraudulently concealed the said assignment from William Brownfield to George Brownfield, that he

ASHCRAFT vs. BROWNFIELD &c.

himself was ignorant thereof, as also, of the fact, that the deed for 22 acres was unrecorded; that Brown's mortgage was paid, and he has the release of Cessna's mortgage, according to Cessna's agreement to that effect, before his purchase; that Cessna had received part of the purchase money, and William Brownfield the balance; he prays that the land may be conveyed to him, that Cessna be compelled to pay Chastain the fifty dollars and interest, and both in his original and amended bill, he prays for such general relief, other than his prayer of specific relief, as may be proper and required by the nature of his case.

Answers.

William Brownfield and Cessna, and Chastain, contend that the obligation to Ashcraft, does not include the 22 acres; this is the bone of contention.

Decree of the circuit court.

The circuit court refused to decree to Ashcraft the 22 acres, but for the residue, directed a deed with general warranty to be executed by William Brownfield: farther, that the defendant, Brownfield, pay the costs, from which decree Ashcraft appealed.

Discussion of the evidence and instrument, on the question of, whether the land was included in the bond for the conveyance.

The expressions between John Ashcraft on the upper side, and John Wallace on the lower side, apply to the twenty-two acres, as well as to the residue; this is palpable by inspection of the plat of survey returned. The quantity claimed by Ashcraft, is between sixty and sixty-six acres. The southwest corner of the complainant's former purchase, (alluded to in the obligation of 1829, aforesaid,) is on Wallace's line, the angle at this point of junction, made by the courses of Wallace and Ashcraft, is an acute angle. Wallace's line runs to the northwestern corner of the twenty-two acres, which is also the corner named in the inclusive deed of Briscoe to William Brownfield of 1814; Ashcraft's old line strikes the northern boundary of Brownfield's patent, and of Briscoe's deed of 1814, at right angles; and the line from Wallace's northeastern corner, to the northwestern corner of Ashcraft's former tract, is a line common to Morgan and Edward Brownfield's patent, and Briscoe's deed made to William Brownfield. So that the land claimed by Ashcraft, under his purchase of 1822, lies in a right

angled triangle, bounded on one side by his own former tract, on the second by Wallace, on the third by Morgan's and Briscoe's (or Brownfield's) common line; Wallace's line from Ashcraft's corner to Brownfield's and Wallace's common corner, subtends the right angle. The 22 acres lie in the extreme northwestern angle. The controversey, however, will be at once comprehended by the annexed diagram explanation. [See plat No. 1, at the end of the volume.] If the twenty-two acres were not intended to be sold to Ashcraft, then the tract should have been described as lying between Ashcraft, Wallace and the lines of the twenty-two acres. The reference to Morgan's line, shows also, that the twenty-two acres were intended; for the question was whether Morgan's line ran south fifty degrees east, with Brownfield's, or south forty-five degrees east, so as to clash with Brownfield, and include his house; but it seems there is no conflict between them. The mortgage which Cessna held, and which Ashcraft required to be assigned to him before he would assent to purchase, expresses to be for 100 acres, the tract whereon William Brownfield then lived, he lived on the 22 acres, they included the house and orchard. The fact of Ashcraft's insisting on having in this incumbrance before the purchase, and that the arrangement was accordingly made, is charged in the bill, not denied by the answers, and abundantly proved by the depositions. Before Ashcraft purchased, valuers were appointed to fix the price, of whom Cessna was one, the house and orchard were shown and estimated as part of the premises. The attempt is to show, that the sum of three hundred and fifty dollars, was only a fair price for the residue excluding the 22 acres, that is not alleged by the answers; a question is put to a witness whether the residue excluding the twenty acres was not worth $350; he answers, he thinks the whole, including the 22 acres, worth six hundred dollars; against this opinion stands the opinion of the valuers appointed by the parties, and the contract.

Reference to the diagram.

The reliance is, that the wording of the contract excludes the 22 acres, because that deed was not recorded, and the contract refers to the record. The

Effect of the clause in the bond "con.

ASHCRAFT vs. BROWNFIELD &c.

veyed to obligor by deeds recorded in the county court office."

reference to the record proves that Briscoe had conveyed to William Brownfield, as well the 22 acres, as the residue. The obligation does not refer to one deed in particular. It does not except land conveyed by Briscoe, by a deed not recorded, but refers to the record to verify the title to the land sold. The record does verify the title from Briscoe, as well to the 22 acres as to the residue, the description between Ashcraft *on the upper* side, and Wallace on the lower side, and conveyed to said Brownfield by Jeremiah Briscoe, together with the reference to Morgan's line, leave no doubt as to the tract, the single description, "*said convaince record*," cannot be abstracted from the *other descriptions*, nor be made by its equivocal enigmatical meaning, to overrule unequivocal descriptions. Every one who referred to the record would see distinctly that the 22 acres had been conveyed, and the conveyance was acknowledged by Briscoe, as attested by the record.

Obligation taken most strongly against the obligor.

That the whole tract between Wallace's and Ashcraft's lines was sold, up to Morgan's line, subject to the contingency of refunding a part of the purchase money, if Morgan cut into Brownfield's claim, cannot be doubted. The obligation must be taken most strongly against the obligor; if he intended not to sell the 22 acres, they should have been explicitly excepted out of the general descriptions which include them.

An assignment on a deed of conveyance expressed to be to secure the payment of a sum of money creates a lien in equity.

That William Brownfield, Cessna and Chastain entered into a vile combination to defraud Ashcraft, is plain. The only difficulty is respecting the fifty dollars, for which George Brownfield had received the assignment of the unrecorded deed as a pledge. William Brownfield lived on the land, Ashcraft was not apprized of *that assignment, not even when he* exhibited his original bill. William Brownfield and Cessna concealed the fact; Cessna by his deed of mortgage from William Brownfield, acquired the legal title; but he knew of the assignment of the deed to George Brownfield; he was a witness *to it*. That assignment, however, passed but an equity. Chastain, by his deed from Briscoe, acquired nothing; Briscoe had nothing to part with, and Chas-

tain was acting in that with full knowledge of Ashcraft's claim. From whom Chastain obtained that deed and assignment, does not certainly appear, there is some reason to believe he acquired it from Cessna, and that he had it when he assigned his mortgage to Ashcraft, but that fact is not charged in the bill. It is there said, Chastain obtained that assignment from George Brownfield, who is no party. If Ashcraft had obtained a deed, clothing him with the legal title, there would have been no difficulty, he would have been a *bona fide* purchaser without notice, but he is complainant asking equity. Who was guilty of the erasure of the part of the assignment on the unrecorded deed, does not distinctly appear, if traced to George Brownfield, or to Chastain, or to Cessna, whilst either held it, then the equity which arose by virture of that assignment, to have the fifty dollars, is gone.

It is clear that Aschcraft is entitled to have a conveyance of the 22 acres from William Brownfield, and from Cessna, but whether he shall be decreed to pay the fifty dollars with interest, or not, is the question. If he must, he is entitled to a decree over for it against William Brownfield. But to the final adjustment of the question, whether that mortgage or pledge created by the assignment of the unrecorded deed, has, or has not been extinguished by satisfaction, or by the erasure, or to whom it is to be paid if due, George Brownfield is a necessary party.

It is, therefore, ordered and decreed, that the decree of the circuit court be reversed, that the case be remanded, with leave for the complainant to amend his bill, touching the agreement of the unrecorded deed of 22 acres, and to bring George Brownfield before the court if he shall elect so to do, in reasonable time, to be assigned by that court, and for such other and farther proceedings to be had, according to the usages of courts of equity, so as to enable that court to make final decree in accordance with the principles expressed in the foregoing opinion.

Appellant to have his costs.

*Darby*, for Brownfield; *Triplett*, for Chastain.